IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                      Case No. 3:08CV304

         Plaintiff

     v.                                                         ORDER

Rudy Franco, Jr., et al.,

         Defendant

       This is a criminal case in which the defendant Franco has filed a motion to unseal transcripts of any oral testimony taken under oath when the undersigned issued orders authorizing electronic surveillance pursuant to 18 U.S.C. § 2510 *et seq.*, oral statements made during periodic reports during the execution of the orders and copies of any written reports. [Doc. 125].

       The government does not oppose the request for transcripts. The government asks, though, that it review the transcripts to redact information relating to other investigations, or other information it desires not to disclose, before dissemination to the defendants. The government then proposes providing the original and redacted versions to me for further review to determine the propriety of redaction.[1]

---

[1] The government also asks that I enter a protective order restricting disclosure of whatever transcripts go to defense counsel. I leave it to the government and defense counsel to negotiate and sign such

The government shall prepare, review and submit the transcripts to me as it proposes. To the extent that the time required for it to do so necessitates an adjustment of the pretrial motion schedule with regard to motions to suppress the surveillance evidence, I will make whatever adjustment is needed once defense counsel have received the transcripts.

With regard to the defendant's request for copies of any written progress reports: there are, as the government notes, no formal written reports. The only written materials submitted during progress reports are the monitors' call logs. The logs note the duration of the call, whether the call was pertinent and the apparent subject of the call. Monitors also summarize the content of pertinent calls.

I review the logs in the interim between their submission and the next progress report date. I then notify the government if I have any concerns with regard to its compliance with the minimization directive.

The government argues that there is neither statutory nor other basis for ordering production of the call logs. I agree that neither Title III nor the Rules of Criminal Procedure *specifically* authorizes the discovery sought by the defendant's motion. But that does not mean that I cannot order such production, or that it should not occur.

Section 2518(8)(d) of Title III requires service of a post-surveillance "inventory" within ninety days after termination of the surveillance. The inventory goes to persons named in the order and others as directed by the judge, and informs them of: 1) entry of the order; 2) the date of the order's entry and period of authorized interception; and 3) the fact that during the period, wire, oral, or electronic communications were or were not intercepted.

---

order. If the parties can't agree on the order, they can submit their dispute to me.

That section also provides that: "The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection *such portions of the intercepted communications*, applications and orders as the judge determines to be in the interest of justice." 18 U.S.C.A. § 2518(8)(d) (Emphasis supplied).

Defendants ordinarily receive transcripts of the conversations that the government intends to use at trial, along with transcripts of any *Brady* material. Usually those transcripts are of only a fraction of the recorded conversations.

The government typically makes the entire set of intercepted recordings available to defense counsel. But, so far as I am aware, those recordings, though, I assume, in chronological order, otherwise are not indexed. Defense counsel, in other words, has no indication of who spoke to whom when and what they might have discussed.

This means that counsel may have to listen to hundreds, if not thousands of hours of conversations to determine whether something useful might be found. Even where the client, despite the passage of time between interception and indictment, might be able to recall speaking with someone about something pertinent at or around a specific time, such recollection is unlikely to be precise or focused. In which case, counsel probably would have to spend considerable time looking for such conversations.

The call logs give the government a roadmap which makes its access to specific conversations relatively easy and efficient. Those logs should be available to defense counsel to serve the same useful function.

Though § 2518(8)(d) refers to the notice provided under that section as an "inventory," the notice simply is not as complete or informative as the information routinely provided in the context

3

of a conventional search and seizure. Rule 41(f)(1)(B) of the Federal Rules of Criminal Procedure mandates, on execution of a conventional search warrant, that "[a]n officer present during the execution of the warrant must prepare and verify an inventory of any property seized." In addition, Rule 41(f)(1)(C) requires "[t]he officer executing the warrant [to] give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property."

Neither § 2518(8)(d) nor Rule 41 requires anything similar with regard to the material seized through execution of an electronic search under Title III. This is so, even though the circumstances of an electronic search differ significantly from those of a conventional search.

When officers execute a conventional search, the target, if present, knows immediately that the search has occurred. Even if the target is not present, the receipt mandated by Rule 41(f)(1)(C) provides detailed notice as to what has been taken. Moreover, Rule 41(f)(1)(D) requires the officers to return the inventory mandated by subsection (B) to the issuing Magistrate Judge; that judicial officer, in turn, "must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken." Fed. R. Crim. P. 41(f)(1)(D).

The target of a conventional search thus knows either at the time of the search or shortly thereafter that it has occurred and, even more importantly, what was taken.

Neither is true with an electronic search, which by its nature must be and remain secret until surveillance has ended. Even thereafter, § 2518(8)(d) allows the secrecy to continue for up to three months. Where, as in this case, there has been a series of extension orders, it will be impossible, as a practical matter, for anyone whose conversations the government intercepted to recall what such interception might have "seized."

4

As specified in § 2518(8)(d), the contents of the "inventory" provided under that section is such in name only – if even that. This is so, despite the contention in the formal legislative history of Title III, Senate Report 1097, that § 2518(8)(d) reflects existing search warrant practice. S. Rep. No. 1097, at 2194.

To the extent that replication of existing practice regarding conventional searches was the legislative perception and desire, § 2518(8)(d) doesn't do the job. Which should be to give persons whose conversations the government intercepted during a protracted and secret search some indication, at least, about what was overheard.

Section 2518(8)(d) does not entirely preclude giving such persons that information. As noted, that section gives me discretion to provide "such portions of the intercepted communications" as I "determine[] to be in the interest of justice."

Though not necessarily – indeed, rarely – verbatim, the call logs do contain "portions of the intercepted communications." Thus, contrary to the government's contention, I conclude that § 2518(8)(d) authorizes disclosure of the call logs if such disclosure is in the interest of justice.

Such disclosure is in the interest of justice for several reasons.

First: it ameliorates somewhat the consequences of the fact that electronic searches are secret, prolonged and deeply intrusive into conversational privacy, and the additional fact that individuals first learn of those intrusions long after they have occurred. While those are all preconditions to the success of an electronic search, that hardly justifies enhancing the secrecy by withholding the call logs.

The call logs give persons whose conversations have been overheard surreptitiously the same access that the government enjoys, thereby leveling the playing field somewhat. It also saves time

5

that otherwise would be spent by defense counsel – usually at taxpayer expense – sifting through recordings.

The call logs provide defense counsel – as they did me when the government submitted them to me – with a window into minimization. As a practical matter, challenges to minimization are, along with claims that the government failed to show necessity for the surveillance as required under § 2818(1)(c), the most common components of suppression motions under Title III. Unless defense counsel has access to the call logs, they will be unable to assess whether such challenge can or should be made. Counsel uninformed about what actually occurred are more likely to assert fruitless challenges, thereby wasting their time and that of the government and court, than counsel who have a basis, via the call logs, for assessing whether such challenge might be successful.

Indeed, the court in *U.S. v. Wright*, 121 F.Supp.2d 1344 (D. Kan. 2000), one of the two cases cited by the government in its opposition to the defendant's discovery request,[2] expressly ordered production of monitor call logs as a means of facilitating the defendants' assessment of minimization and preparation of a minimization challenge:

> The case law shows that the defendants and the district courts generally gain access to information that is only available from monitor log sheets or related database printouts in addressing and deciding minimization challenges, in particular, in arriving at the percentages of non-pertinent calls and minimized calls. The government narrowly reads this body of cases as going to what the government must provide in order to avoid a minimization hearing as opposed to what the law requires in discovery. . .
> . . . [T]he court believes what must be produced and when it should be produced are issues fully committed to this court's sound discretion. . . . In the interests of fairness and expedition, the court will direct the government to provide the moving defendants with the monitor log sheets, with proper redactions, within twenty days of this order.

---

[2] In addition to *Wright*, the government cites *U.S. v. Marchman*, 399 F. Supp. 585, 586 (E.D. Tenn. 1975). That case refers to progress reports, rather than monitors' logs, which are at issue here.

*Id.* at 1350 (citations omitted).[3]

With reference to assessment of minimization, the call logs, to the extent that they show the numbers of calls of less than two minutes duration, spot monitoring and pertinence of longer interceptions, may make a hearing unnecessary. While that is not necessarily so, minimization challenges often resolve themselves on examination of the call logs.

The call logs will make it easier for defendants to pinpoint particular conversations that might be useful to them and counsel. Even where the government fulfills its *Brady* obligation entirely, that does not mean that it might not overlook conversations which would be helpful to the defense.[4] Figuring out what might be useful to the defense should hardly be left to the government and its *Brady* review.

---

[3]

The court in *Wright* permitted redaction from the call logs of the agents' "summary of the call or conversation . . . [as] mental impressions amounting to work product . . . prepared for the criminal investigation under Rule 16(a)(2)." *Id*. The court also noted that the "defendants have not shown that the information typically found in this segment of a monitor log sheet would be material to their minimization challenge." *Id*.

Certainly, to the extent that an agent's notes contain his or her mental impressions as to the investigatory significance of a particular conversation or segment thereof, redaction might be appropriate. But where the notation, as commonly is the case, simply recites the speakers, subject, or content, redaction would not be proper. That is precisely the information needed to assess minimization.

Redactions, if any, in the call logs should be minimal and clearly necessary.

[4]

One example: a defendant is more likely than the government to be aware of actual roles in a drug conspiracy. Being able easily to access not just his or her intercepted conversations, but those of co-conspirators as well, may help a defendant prepare and make a better case for a lower base offense level than he or she might otherwise be able to do. This is less likely to be the focus of the most diligent *Brady* review by the government, though it would be of great interest to a defendant awaiting sentencing.

When submitted, the call logs are in the nature of *ex parte* communications. Once the need to keep those communications secret has expired, not allowing them to be disclosed simply does not appear fair or appropriate. An adversary should, whenever possible, know what the government has been telling the court. This is especially so where one party has met with the court on a regular and periodic basis over a long period of time.

Finally, the government's opposition to disclosure of the call logs in this case includes no contention that it will incur any prejudice from disclosure. Given the defendants' access to all the recordings, it is difficult to comprehend how the call log summaries, with the limited redactions authorized herein, would place the government at any risk of prejudice.

**Conclusion**

For the foregoing reasons, I conclude that § 2518(8)(d) authorizes disclosure of the call logs which make up the only written materials submitted during the periodic progress reports. Serving not just the interests of the defendants, but those of the government and court as well, especially with regard to any minimization inquiry, such disclosure serves the interests of justice in this case.

It is, therefore

ORDERED THAT:

1. Defendant's motion to unseal [Doc. 125] be, and the same hereby is granted with regard to oral testimony and statements as requested;

2. Court reporters, be, and they hereby are authorized to prepare transcripts per notice from the government, and to provide said transcripts for review to the government; following such review, government to submit unredacted and redacted versions to the undersigned; costs

of said transcripts to be billed by counsel under the Criminal Justice Act; parties to negotiate a protective order;

3. Government to provide copies of call logs as directed herein; and

4. Time for defendants to file motions regarding electronic surveillance held in abeyance pending delivery of transcripts and call logs to defense counsel and further court order.

So ordered.

                                               s/James G. Carr
                                               James G. Carr
                                               Chief Judge