IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America | ) | Case No. 3:08-CR-304-4 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| | ) | |
| Raudell Rodriguez-Gonzales, | ) | |
| | ) | |
| Defendant. | ) | |

Pending in this case is the defendant's Second Motion to Reduce Sentence. (Doc. 658). The government opposed the motion (Doc. 661), and the defendant filed a reply (Doc. 664). The government has filed a notice of supplemental authority (Doc. 667), to which the defendant has submitted a response. (Doc. 668).

For the reason that follow, I find that extraordinary and compelling circumstances justify granting the motion. Because the defendant does not, as an alien subject to deportation, qualify for release on home detention, I order his immediate release and remand to the custody of Immigration and Customs Enforcement (ICE).

## Background

The defendant plead guilty to serious drug crimes. On June 5, 2012 I sentenced him, as a, a career drug offender, to 240 months imprisonment. Currently confined at USP Lompoc in

central California,[1] the defendant's anticipated out date is June 28, 2025.

https://www.bop.gov/inmateloc/.

The defendant is currently sixty-eight years old. This, according to his attorney, makes him, due to his elderly status, eligible for release under under 18 U.S.C. § 3582(c)(1)(A)(i).

The government disagrees, pointing out a person released under that section must serve his remaining term in home confinement. This the defendant cannot do, the government contends, because once released from custody, ICE will obtain custody and deport him to Mexico. Though, presumably, the defendant will have a residence there, enforcement of the home confinement restriction is not possible.

The defendant also seeks compassionate release due to various health conditions, including diabetes, which, he contends, place him heightened risk of serious illness or death if afflicted with Covid-19. He also asserts that he has severe back pain. He supports this contention by reference to the results of a magnetic resonance imaging (MRI) on July 23, 2020. (Doc. 658, PageID 7010, ref. Med. Records @ 21-23). According to the defendant's counsel, the MRI stated that Mr. Rodriguez-Gonzales has "significant multilevel spondylotic disc and endplate change and facet arthropathy." *Id.* In other words, the MRI shows the defendant has spinal disc degeneration with nerve inflammation.

Defendant contends, and the government does not dispute, that he needs back surgery to remediate, to the extent possible, this condition. Despite the defendant's condition and need for surgery, the medical staff at Big Spring, a private prison, consistently refused to arrange such

---

[1] At the time of the filing of the Second Motion to Reduce Sentence, the defendant was incarcerated at Big Spring FCI in Texas. (Doc. 658, PageID 7009). The BoP's inmate locator shows that he has been transferred to USP Lompoc. https://www.bop.gov/inmateloc/. The circumstances surrounding the motion, however, have not changed.

surgery. It did so because, according to it, it did not have access to the MRI results. This was so because those results were part of the defendant's medical records with the BoP.

The defendant, through his attorney, has attempted on several occasions to provide the records. Due to some inexplicable, reason, the Big Spring mail room sent the records back to the defendant's attorney.

## Discussion

To grant compassionate relief, I must: 1) find the extraordinary and compelling circumstances justify such relief: and 2) apply the 18 U.S.C. § 3553(a) factors to determine if release is appropriate under all the circumstances.[2]

This case presents, what in my experience, is an extraordinary situation. The defendant needs – and is entitled to – medical care and treatment that may relieve him of serious and debilitating pain. From the record presently before me, that means that he is entitled to have back surgery. But the institution in which the BoP had placed him did not provide or authorize it.

The prison did not do so, claiming it did not have the necessary diagnostic records that a surgeon would need before heading for the operating room.

Given the lack of any other explanation, it is likely that Big Spring did not try to get the records. Indeed, it failed to allow the records that defendant's attorney sent – on more than one occasion during a nine month period – to pass its prison portals. I find this self-engineered Catch-22 as inexcusable as it is extraordinary. Surely there was someone at Big Spring who

---

[2] In this effort, I can no longer rely, as I did in overruling the defendant's original motion for compassionate release (Doc. 623, 633 ) on Application Note 1(a)(ii) of § 1B1.13, which does not apply to requests made under Application Note 1(B) and which after *Jones* and *Elias* is no longer a sufficient reason to deny relief. *United States v. Hampton*, 985 F.3d 530 (6th Cir. 2021). To the extent that the government's opposition argues to the contrary, I find that portion of its opposition unpersuasive.

could have called the BoP, asked for the records, and had them sent in such a manner that they would have wound up in a surgeon's hands. But, that did not happen.

This circumstance is, in my view, compelling. The defendant needs medical care for a serious condition that incontestably can be painful and can affect the quality of life. Back pain limits his ability to care for himself. It seems clear that the Big Springs's decisionmakers were not inclined to take even the simplest of steps to respond to this situation.

Having found the defendant's circumstances both extraordinary and compelling, I turn now to the § 3553(a) factors. First, the defendant's history, personal characteristics, and the nature of his offense militate against compassionate release. This is because he is a career drug offender. The havoc his drug dealing wreaked on our community may, even decades later, have ongoing consequences. Some – perhaps many – of the addicts, whose cravings he helped create and perpetuate addiction have drug addict descendants.

Addicts beget addicts. This vicious cycle is a constant in all drug cases. Under typical circumstances, I am strongly inclined to give such consideration, plus the need for individual and public deterrence, substantial weight.

However, this case, given the the private prison's inaction, is different. What matters under these circumstances is whether this defendant will present a danger to the community and others. Certainly, with regard to anyone – not just in our community, but in our country – the answer is, in all likelihood, no. He will no longer be in our community. He will be deported, and the likelihood he would attempt to return – given his age and physical condition – is very slight.

At the time the defendant's PSR was prepared (January 25, 2010), he reported having had four children, then age thirty-two, thirty, twenty-eight, and twenty-six, and all living in Mexico. (PSR, ¶ 89). Additionally, the defendant would be able to support himself upon release and

deportation by giving music lessons in Mexico, as he does while incarcerated to other inmates and staff members.

Just as the risk, or even temptation, to return, to the United States is slight, so is the risk of his becoming a danger to anyone here. One can speculate that the defendant might somehow try to get back into the drug business – but that is simply speculation. At age sixty-eight, that risk too, appears highly unlikely. The family obligations that he sought to meet by drug dealing no longer exist. His parents are dead. His children are grown. He has only himself to care for now.

Thus, there is simply no significant individual deterrent effect that would be undercut if I released him. While public deterrence might be undercut somewhat, that is, particularly in this case, no basis for withholding compassionate release.

I believe that this is a just result, all things considered. And I trust it would enhance respect for the law on the part of those who might become aware of it and my rationale. Indeed, under all the circumstances of this case, to do otherwise would be unjust and could generate disrespect for the law.

Normally, a court considering a motion for compassionate release on the basis that a prisoner is receiving inadequate medical care should deny such motion. This is so because where an institution fails to provide adequate medical care, as the defendant alleges, the proper avenue for relief is the route the Supreme Court laid out in *Estelle v. Gamble,* 429 U.S. 97 (1976).

In *Estelle,* the Court held, a penal institution's deliberate indifference to a prisoner's serious medical condition constitutes the "unnecessary and wanton infliction of pain," which makes the institution liable under the cruel and unusual punishment clause of the Eight Amendment. *Estelle, supra* 429 U.S. at 104. This doctrine applies to federal inmates when prison officials are deliberately indifferent to their serious medical needs. *Farmer v. Brennan*,

5

511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims brought by federal prisoner).

The situation here goes beyond mere deliberate indifference; it reflects a complete refusal by a private institution to take the simplest of steps – *i.e.* make a phone call – to enable an inmate to obtain needed surgery for back pain. This is an institution engendered pretext that it could readily overcome were it so inclined. This is not deliberate indifference; it is an unjustified (and unjustifiable) refusal to provide any of the needed care.

And *that* is what I find both extraordinary and compelling. Therefore, I find the the § 3553(a) factors, on balance, favor granting the defendant's motion for compassionate release.

## Conclusion

In light of the foregoing, it is hereby

ORDERED THAT

1. The defendant's Second Motion to Reduce Sentence (Doc. 658) be, and the same hereby is GRANTED, and

2. The defendant shall forthwith be released from the custody of the Bureau of Prisons and remanded to that of Immigration and Customs Enforcement for deportation to Mexico.

So ordered.

/s/ James G. Carr
Sr. United States District Judge